**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| KMT WIRELESS, LLC d/b/a CYNERGY, a Georgia limited liability company,<br><br>                             Plaintiff,<br>vs.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>and<br><br>EVERETT WOODEL, JR., in his Official Capacity as Administrator for the United States Small Business Administration,<br><br>and<br><br>TRUIST BANK, a North Carolina banking corporation,<br><br>                           Defendants. | Case No. 4:25-CV-146 |

**FILED**

April 21, 2025

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

**<u>AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF</u>**

     KMT Wireless, LLC d/b/a Cynergy, by and through its undersigned counsel, for its Amended Complaint against Everett Woodel, Jr., Administrator for the United States Small Business Administration, and Truist Bank, Inc., alleges as follows:

**THE PARTIES**

     1.     Plaintiff KMT Wireless, LLC d/b/a Cynergy (hereinafter referred to as "Plaintiff," or "Cynergy") is a Georgia limited liability company with its principal place of business at 4055 Corporate Drive, Suite 400, Grapevine, Texas 76051. Cynergy has two member(s) who are each domiciled in the State of Texas.  Cynergy is primarily engaged in the

1

business of remanufacturing electronics as an Authorized Service Center.

2.       Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.* Under the Coronavirus Aid, Relief, and Economic Security Act, the SBA administers the Paycheck Protection Program. Pursuant to Federal Rule of Civil Procedure 4(i), it may be served with process by (a) sending a copy of the summons and complaint by certified mail to the civil-process clerk at the United States Attorney's Office for the Northern District of Texas; and (b) sending a copy of the summons and complaint by certified mail to the agency.

3.       Defendant Everett Woodel, Jr. is the Administrator of the SBA and is sued in his official capacity only. *See* 15 U.S.C. § 634(b)(1). Because he is the officer with final authority for administering the Paycheck Protection Program within the SBA, Administrator Woodel is a proper defendant for Cynergy's declaratory action. Pursuant to Federal Rule of Civil Procedure 4(i), he may be served with process by (a) sending a copy of the summons and complaint by certified mail to the civil-process clerk at the United States Attorney's Office for the Northern District of Texas; and (b) sending a copy of the summons and complaint by certified mail to him.

4.       Defendant Truist Bank ("Truist") is a North Carolina banking corporation.  Truist has been served and appeared in this action.

4897-0021-3273v.1

## NATURE OF THE ACTION

5.      No good deed goes unpunished is certainly a familiar adage for Cynergy who, despite upholding the spirit and intent of the Paycheck Protection Program ("PPP") (*viz.*, keeping Americans employed during the COVID-19 pandemic), is now being forced to repay over $1,000,000.00 secured through the PPP that Truist promised Cynergy would be fully forgivable, and that the law deems forgivable. Truist's repeated misrepresentations and unsubstantiated determination that **less than half** of the $2,228,862.00 loan Cynergy applied for through the Paycheck Protection Program is forgivable, and the SBA's arbitrary and capricious failure to do *anything* in light of Cynergy's repeated requests for loan review, have caused Cynergy substantial injury.

## JURISDICTION AND
## VENUE

6.      This Court has federal-question jurisdiction of this action under 28 U.S.C. § 1331, as Cynergy brings claims against a United States government agency under the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court also has jurisdiction pursuant to 15 U.S.C. § 634(b)(1) which vests jurisdiction in any United States District Court to adjudicate cases against the Administrator of the SBA.

7.      This Court has subject matter jurisdiction over the dispute between Cynergy and Truist pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

8.      Alternatively, this Court further has supplemental jurisdiction over all state-law claims pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over Truist because, among other things, it has established bank branches in this District and purposely availed itself of the laws of this

jurisdiction by contracting with individuals and other business entities in this jurisdiction.

10.     Venue in the District Court for the Northern District of Texas, Fort Worth Division is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1)(B), because the misrepresentations complained of in this lawsuit were directed to this District and Division, and the funds received by Cynergy through the Paycheck Protection Program were used by Cynergy in this District and Division.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.  Cynergy's workforce

11.     Cynergy is an authorized service center for various electronics manufacturers and primarily refurbishes devices. Cynergy's primary customer is Google, and Cynergy is the only authorized service center in the US and Canada that remanufactures the Pixel line of Google cell phones. Cynergy's other customers include TCL, Formlabs, Konnect One, and previously, Glowforge.

12.     Before the Coronavirus pandemic, Cynergy consistently utilized a workforce of: (i) 300-400 individuals who were secured through various staffing companies in the Dallas-Fort Worth Metroplex; and (ii) 30-35 W-2 employees of Cynergy paid hourly or by salary. This model allowed Cynergy to be nimble and proactive to quickly gear up for increased unit volumes as business conditions dictated.

13.     Cynergy determined the positions in its workforce that would be filled by staffing companies, ultimately approved the individuals sent by staffing companies, set those individuals' schedules and pay, and trained them. Because Cynergy's work requires precision and use of delicate electronic instruments, Cynergy provided comprehensive training in all aspects of the remanufacturing process to the entirety of its workforce at Cynergy's sole cost and expense—

whether the worker was a W-2 employee of Cynergy or found through a staffing agency.

14.     Through this workforce model, Cynergy paid the staffing companies on a cost-plus model, wherein Cynergy paid for the direct cost for the portion of its workforce secured through a staffing company, plus a markup for the respective staffing company.

15.     In or about 2014, Cynergy established a banking relationship with SunTrust Bank and opened bank accounts and a line of credit there.

16.     In or about 2019, SunTrust Bank and Branch Bank & Trust merged to become Truist.

**B.  The Cares Act Program**

17.     In the wake of the Coronavirus pandemic beginning in early 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), was signed into law. The CARES Act included the PPP, which served as an economic relief package to provide assistance to small businesses. The PPP was designed to provide a direct incentive for small businesses to maintain their workforce.  The program provides small businesses with funds to pay up to eight weeks of payroll costs. *See* 15 U.S.C. § 636(a)(36)(F)(I).  The funds can also be used to pay overhead costs such as rent, utilities, and mortgage interest, and other operational costs. § 636(a)(36)(F)(V). The PPP thus provided small businesses with resources to maintain their workforce and to cover applicable overhead expenses. *See* 15 U.S.C. § 636(a)(36)(F)(i) (listing allowable uses of a PPP loan).

18.     Generally, PPP loans were available to businesses: (a) with 500 or fewer employees whose principal place of residence is in the United States; (b) considered a "small business concern" as defined under the Small Business Act, 15 U.S.C. § 632; and (c) in operation on February 15, 2020, and either had W-2 or 1099 workers or were self-employed. *See* 85 Fed.

Reg. 20812, 2020 WL 1865030 (April 15, 2020) ("Fed. Reg. 20812").

19.     Due to the exigent circumstances of the rapidly advancing pandemic and in response to increasingly distressed small business economy, the SBA sought to streamline and expedite the loan application and certification process. PPP loans were processed and made through eligible private lenders, including federally insured banks and credit unions and other SBA-approved lenders. Businesses could "apply through any existing SBA 7(a) lender or through any federally insured depository institution, federally insured credit union, and Farm Credit System institution that is participating ("Lender" or "Lenders"). Thus, Fed Reg 20812 authorized Lenders, like Truist, with the express purpose of expediting the loan application, qualification and certification process:

   a.     "Specifically, small businesses need to be informed on how to apply for a loan and the terms of the loan under section 1102 of the Act as soon as possible because the last day to apply for and receive a loan is June 30, 2020."

   b.     "The intent of the Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program."

   c.     "SBA will allow lenders to rely on certifications of the borrower in order to **determine eligibility** of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to **determine qualifying loan amount** and **eligibility for loan forgiveness**." (emphasis added)

*See* 85 Fed. Reg. 20816, 2020 WL 1865030 (April 15, 2020). Without a doubt, one of Truist's primary roles was to "inform" small businesses on how to apply for a PPP loan as well as the terms of  the loan, which, under the PPP loan program, necessarily involves "eligibility for loan forgiveness."

20.     Other regulated lenders will be available to make these loans once they are

approved and enrolled in the program."[1] The PPP loans are made by the financial institutions with financial institution funds, and do not include any government or SBA funds.

21.    Truist is one of the many financial institutions participating in the SBA's PPP loan program.  Truist is an SBA lender as established and regulated by 15 U.S.C.A. § 633 *et. seq.* and Title 13 of the Code of Federal Regulations.

22.    Loan applicants submitted their information, documentation, and certifications to those eligible private lenders on standard forms provided by the SBA or substantially similar forms created by the private lenders.  Private lenders were compensated for processing the applications and facilitating the PPP loans. Doing so was profitable for them, as they received a commission under the CARES Act of 5% for loans of not more than $350,000, 3% for loans between $350,000.01 and $1,999,999.99, and 1% for loans of at least $2 million.  *See* 85 Fed. Reg. 20816, 2020 WL 1865030 (April 15, 2020).

23.    Lenders were also required under the CARES Act and accompanying regulations to underwrite the loans they originated, which responsibilities included verifying the documentation submitted by borrowers and confirming the dollar amount of average monthly payroll costs as defined under the PPP. As such, lenders like Truist were required to confirm and verify the amount of any loans disbursed under the PPP prior to disbursement of any funds under the program.

24.    Section 1106 of the CARES Act requires the PPP loans be forgiven, and the SBA to repay the lender the amount forgiven to the extent the borrower uses the funds for certain purposes, including for payroll expenses. 15 U.S.C. § 636(m).

25.    Under the CARES Act, amounts forgiven under this section "shall be considered

---

[1] U.S. Department of the Treasury, Top-Line Overview of PPP (3/31/2020), https://home.treasury.gov/system/files/136/PPP%20--%20Overview.pdf

cancelled indebtedness by a lender." Interim Final Rule RIN 3245-AH34 states that "the borrower will not be responsible for any loan payment if the borrower uses all of the loan proceeds for forgivable purposes." *See* 15 U.S.C. § 636(a)(36)(F)(i) (listing allowable uses of a PPP loan).

**C. Cynergy receives a PPP loan from Truist, in reliance on Truist's representations that it would be forgivable, and uses proceeds for a forgivable purpose – to maintain its workforce and pay permissible overhead costs.**

26.     Cynergy is a company which was eligible to receive a PPP loan. Notably, to be eligible for a PPP loan, Cynergy had to have less than 500 employees. 15 U.S.C. § 636(a)(36)(D)(i)(I). By statute, "the term 'employee' included individuals employed on a full-time, part-time, or other basis." *Id.* § 636(a)(36)(D)(v). "This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern." 13 C.F.R. § 121.106(a). Thus, Cynergy's workforce were all counted as employees for the purposes of determining whether Cynergy was eligible for a PPP loan.

27.     Truist received, processed and approved applications from companies seeking PPP Loans, including Cynergy. Truist derived financial benefit by accepting and funding PPP Loans, including but not limited to Cynergy's loan.

28.     As an SBA lender, Truist was required to be aware of the uses of PPP Loan proceeds that the SBA considered to be "forgivable purposes" or "Permitted Uses" for purposes of loan forgiveness. This included awareness of Interim Rules and Guidance promulgated by the SBA from time to time after the passage of the CARES Act. Moreover, Truist was authorized by the SBA to act as its conduit to convey to borrowers information necessary to complete the PPP loan application and certification process.

29.     In April of 2020, Cynergy, an existing customer of Truist, contacted JC Boyanton, Cynergy's account representative with Truist, to apply for and participate in a Truist

sponsored loan (the "Loan") under the PPP. Truist required Cynergy use Truist's portal to submit the Loan application. Cynergy could not have applied for the Loan directly with the SBA or through any conduit other than one of the SBA's chosen and authorized Lenders, like Truist.

30.    Given its unique workforce, and the lack of clear guidance directly from the SBA to potential borrowers regarding the payment of a workforce secured through a staffing agency, Cynergy was faced with drastically reducing, and even eliminating, the entirety of its workforce secured through staffing agencies, to ensure the Company's continued operations during the Coronavirus Pandemic, to the extent such amounts were not deemed forgivable under the CARES Act.

31.    While Cynergy understood that its workforce all counted as "employees" for the purposes of determining if Cynergy was eligible for a loan (*see infra,* ¶ 27), Cynergy was unclear as to whether its historical business practice of paying the portion of its workforce obtained through staffing companies would qualify as "payroll," and thus a "forgivable purpose" a borrower could use its loan proceeds on. 15 U.S.C. § 636(a)(36)(F)(I).

32.    Accordingly, Cynergy immediately contacted Truist for further guidance on which amounts could be included in its PPP Application for "Payroll Costs." Specifically, and prior to applying for PPP loan proceeds, Cynergy sent an email to JC Boyanton on April 9, 2020, advising "We have about 275 employees at any time that work for us from four temp agencies. This has been our business model for many years.  I feel the payroll for them is to be included but cannot find where it is addressed.  They are not 1099 employees," directly asking "What is SunTrust interpretation?" Thus, as of April 2020, Truist was well aware that the vast majority of the workforce used by Cynergy was secured through employee staffing companies.

33.    In response, a representative of Truist directly represented to Cynergy that such

amounts could be included in its PPP Application and would not create an issue for forgiveness. This was welcome and relieving news to Cynergy, as had Truist not represented that such amounts would be forgivable, Cynergy would have been forced to reduce or otherwise eliminate that portion of its workforce secured through staffing companies. Truist did not ask any questions regarding whether the staffing companies would claim these employees in their own PPP loans nor ever suggest that this factor could affect Cynergy's loan forgiveness. Moreover, Truist did not inform Cynergy that Truist was not the appropriate source of information regarding forgiveness; Truist did not direct Cynergy to contact the SBA, nor did Truist direct Cynergy to contact any other entity, or even to review the federal regulations to independently answer Cynergy's own question. Instead, Truist, an authorized Lender for the SBA charged with informing borrowers of the terms of the PPP loan program, including "eligibility for loan forgiveness," directly answered Cynergy's question with no caveats or reservations.

34.     In direct reliance on such representation, Cynergy, through the Truist portal, submitted its PPP Application on April 9, 2020, with the "Borrower Worksheet" created by Truist, showing that Cynergy paid $10,723,102.98 in "salary, wage, commission, or similar compensation, including cash tip or equivalent, and payment for vacation, parental, family, medical or sick leave," supported by 941, W-3 and "Temp Payroll Payments" made to DFW Job Interlock, Automation Personnel Services, MOA Staffing, and MDMartin, LLC, which were submitted to Truist through its portal.

35.     On April 15, 2020, the SBA issued an Interim Final Rule which expressly included the following language:

> **Do independent contractors count as employees for purposes of PPP loan calculations?** No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan calculation.

4897-0021-3273v.1

85 Fed. Reg. 20813, 2020 WL 1865030 (April 15, 2020).

36.     Thus, no later than the publication of the April 15, 2020 interim final rule, Truist knew or should have known that if someone other than the borrower – such as the staffing company – could have applied and received a PPP loan for the same workers, then the SBA may not forgive the portion of PPP proceeds used to pay those workers.  To the extent Cynergy's loans are not forgivable, Truist also knew or should have known no later than April 15, 2020 that Cynergy's workforce staffed through temporary staffing agencies may not count as employees and that funds paid for this portion of the workforce to the staffing company would not qualify as "payroll."

37.     Truist never corrected its prior representations nor alerted Cynergy to the fact that the amounts paid to temporary staffing agencies would not be forgiven before Cynergy took a PPP loan and used its proceeds to pay such amounts.

38.     On April 16, 2020, Matt Devitto, a representative of Truist, who reviewed the "Borrower Worksheet" submitted by Cynergy with its PPP Application made the direct representation that "PPP worksheet #s seem to be verifiable" which was forwarded to Cynergy by JC Boyanton on the same day and relied upon by Cynergy when moving forward with its PPP Application including amounts paid to the portions of its workforce secured through a staffing company. Again, Truist did not caveat its response to Cynergy or direct Cynergy to contact any other source, including the SBA, for verification that its loan application materials were acceptable.

39.     On April 20, 2020, and as a condition to receiving the Loan, Truist required Cynergy execute a Note (the "PPP Note") wherein Cynergy certified that "[a]ll proceeds of the Loan will be used only for business-related purposes as specified in the Application and

consistent with the Paycheck Protection Program Rule."

40.     As a bank working directly with the SBA to administer PPP loans to small businesses, Truist knew that the primary purpose of the PPP was to help small businesses survive the pandemic by providing funds, by way of forgivable loans, through which those businesses could continue to maintain and pay their workforces. At the time Cynergy applied for its PPP Loan, based on the representations Truist made, Cynergy reasonably expected that amounts Cynergy paid for the portion of its workforce secured through staffing companies from Loan proceeds would ultimately be forgiven.

41.     At the time of executing the PPP Note, Cynergy relied upon Truist's representation that the amounts paid to its workforce secured through staffing companies were permissible under the PPP as such amounts were specifically included in Cynergy's Loan Application and Borrower Worksheet. Had Truist informed Cynergy prior to executing the PPP Note that these amounts may not be forgiven under the PPP, Cynergy would not have executed the PPP Note, nor proceeded with the Loan – and certainly would not have borrowed amounts that would not have been forgiven.

42.     On April 21, 2020, Truist funded the Loan that Cynergy applied for based on Truist's instructions and representations, and which Truist approved, in the amount of $2,228,862.00, including amounts to be paid to Cynergy's workforce secured through staffing companies, namely DFW Job Interlock, Automation Personnel Services, MOA Staffing, and MDMartin, LLC. At the time of funding the Loan, Truist had actual knowledge that the majority of the loan amount requested would be used to maintain and pay for the portions of its workforce secured through these staffing companies.

43.     At no point, from the time Truist received Cynergy's PPP application until the

time Cynergy requested full forgiveness of the Loan, did Truist apprise Cynergy that payments it might make for the portion of its maintained workforce secured through staffing companies would not be eligible for forgiveness because such workforce may have been included in the staffing companies' respective PPP loans. Having represented to Cynergy that the proposed uses set forth in its loan application would not cause an issue for forgiveness, Truist, after receiving additional guidance from the SBA including a directive from the SBA on April 15, 2020, did not correct, amend, or otherwise update the representation it made to Cynergy.

44.    In furtherance of the spirit and intent of the PPP and with the $2,228,862.00 Loan proceeds, Cynergy was able to maintain its pre-pandemic workforce, including those secured through staffing companies, many of which had been working for Cynergy for months, if not years, prior to the onset of the COVID-19 pandemic.

45.    Cynergy, and not the staffing companies it used, created the positions for the workforce used by Cynergy throughout the pandemic.

46.    Cynergy also paid for SARS-CoV-2 testing for its workforce secured through staffing companies, at its sole cost and expense, and sick leave for those workers who either contracted or were exposed to SARS-CoV-2, at its sole cost and expense.

47.    In addition to using the Loan proceeds to pay for Cynergy's workforce at its Grapevine, Texas facility, Cynergy used the Loan proceeds to pay: (i) rent for its facility located in Grapevine, Texas; (ii) utilities for its facility in Grapevine, Texas; (iii) worker protection improvements and sanitization at its facility located in Grapevine, Texas, all of which were permitted uses under the PPP.

**D. Cynergy applies for and is effectively denied PPP loan forgiveness by Truist in a manner precluding SBA review.**

48.    On July 23, 2020, the SBA issued Procedural Notice Control No. 5000-20038

regarding SBA Forgiveness Applications and loan review wherein the SBA advised all PPP lenders, including Truist, that "Providing an accurate calculation of the loan forgiveness amount is the responsibility of the borrower, **and Lenders may rely on borrower representations**. Lenders are **expected** to perform a good-faith review, **in a reasonable time**, of the borrower's calculations and supporting documents concerning amounts eligible for forgiveness." The initial forgiveness determination, therefore, was in Truist's hands. After determining the PPP loan amount to be forgiven, Truist would submit the borrower's forgiveness application along with Truist's forgiveness determination to the SBA on behalf of the borrower. The SBA would thereafter review Truist's determination of forgiveness and make appropriate payments in accordance with Truist's determination.

49.    On October 2, 2020, the SBA began approving PPP forgiveness applications, however, Truist required its borrowers to complete and submit the SBA's forgiveness application though Truist's portal, precluding Cynergy from directly applying for forgiveness through the SBA.

50.    On January 15, 2021, the SBA published Procedural Notice Control No. 5000-20077 wherein the SBA required that all PPP lenders, including Truist, to notify their borrowers within five business days of any of the following: (i) a decision by the lender to deny forgiveness in full, (ii) a decision by SBA declining a request for review by a borrower of a Lender's decision to deny forgiveness in full, (iii) a final SBA loan review decision, including an SBA loan review decision on forgiveness (whether approving or denying forgiveness in whole or in part, and (iv) remittance by SBA to the lender of the loan forgiveness amount, whether partial or full. This notice further cautioned lenders providing notice to their borrowers "to avoid providing erroneous information to borrowers regarding requests for SBA review of lender loan forgiveness decisions

or regarding borrower appeal rights."

51.    Importantly, SBA Procedural Notice Control No. 5000-20077 provides that when the SBA issues a forgiveness payment based on a lender's partial forgiveness decision, "[t]he lender's notification to the borrower **must not** indicate that the borrower may appeal the lender's decision to the OHA, because the borrower has no such appeal right to the OHA in this circumstance."

52.    As of March 5, 2021, five months after the SBA began approving PPP forgiveness applications, Truist advised its PPP borrowers with loans exceeding $2,000,000.00 that it was still in the process of updating its portal and that it would let its borrowers know when it would be ready to accept forgiveness applications.

53.    Immediately after receiving notice from Truist that PPP forgiveness applications were being accepted through the Truist portal, on March 25, 2021, Cynergy submitted its application seeking forgiveness of the $2,228,862.00 Loan, certifying, amongst other things, that "[t]he Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness."

54.    In coincidence with the submission of its PPP Forgiveness Application, Cynergy submitted documentation establishing that during the period of April 25, 2020 to September 26, 2020, Cynergy paid the sum of: (i) $5,411,457.52 in payroll costs for its maintained workforce, supported by Cynergy's Form 941, invoices from the various staffing companies it used, and bank reconciliations showing payment to the staffing companies; (ii) $419,024.10 for business rent or lease payments for its facility located in Grapevine, Texas, supported by invoices from its landlord and bank reconciliations showing payment to its landlord; (iii) $83,697.79 in business utility payments, supported by invoices from the utility companies providing services to its

facility in Grapevine, Texas, and bank reconciliations showing payment to the respective utility companies; and (iv) $112,119.37 for covered expenditures, including worker protection improvements to its facility in Grapevine, Texas.

55.    Pursuant to 15 U.S.C.A. § 636m(g), Truist was required to issue a decision on Cynergy's forgiveness application not later than 60 days after March 25, 2021.

56.    After Cynergy submitted its forgiveness application through the Truist portal[2], Truist notified Cynergy on March 31, 2021, that "the amount submitted for employee cash compensation **_appears_** to include payments for temporary employees, which are not eligible for forgiveness, per SBA guidelines," and that Cynergy could either proceed with partial forgiveness or submit additional documentation to support its forgiveness application. Truist did not cite any rule, regulation, or guidance supporting such position. More importantly, this was not a final decision from Truist, but a request for additional information.

57.    Cynergy proceeded with notifying Truist – through the Truist portal – that it disputed this position, stating in pertinent part:

> _We believe Truist is incorrect in denying our application for forgiveness. Truist is mistaken in classifying our workforce as temporary employees, they are workers from staffing companies that provide payroll and some HR services based solely on our direction and criteria. Cynergy makes the hiring, terminating, compensation and training decisions and have consistently employed over 300 people at a time._
>
> _Some of the workers from the staffing companies have been with us for years._
>
> _Truist was informed of our staffing arrangements which have been in place for 21 years when they approved our request for PPP. **_We had several discussions with Truist at the time._**_

58.    In response, and through the Truist portal, Truist represented it had sufficient information to process Cynergy's forgiveness application and that **no further information or**

---

[2] Messages sent by Truist via its portal do not identify the name of the Truist employee transmitting the message. The sender is only identified as "Truist – SBA"

**documentation was needed** from Cynergy at that time.

59.     On April 5, 2021, a representative of Truist – JC Boyanton – wrote to Cynergy advising that "I spoke to the person on our PPP team handling your forgiveness application. **She has approved it**, and after a couple QC checks, you should receive a letter in the portal to that you effect. Then it will go to the SBA who should send payment to payoff the loan. **You are good to go**." Cynergy reasonably interpreted this communication to mean that full forgiveness had been approved for the Loan, Cynergy's forgiveness application had been submitted to the SBA, and that no further action was needed by Cynergy.

60.     After making such representation to Cynergy and lulling Cynergy into the reasonable belief that the Loan had been approved for full forgiveness, Truist apparently reversed course on May 13, 2021, advising Cynergy that: "*The issue that we need help to overcome is staffing and temporary employee agencies are able to get their own PPP loans **and could have counted your employees** as their own employees on their PPP loan applications*," without any proof or documentation supporting such conclusion. By informing Cynergy that the "issue" is on-going and Truist needs help "to overcome" it, Truist communicated it still had not reached a final decision on forgiveness.

61.     Despite acknowledging that the portion of Cynergy's workforce secured through these staffing companies were the "employees" of Cynergy, and amounts paid to employees clearly falling under "Payroll Costs," under the PPP, Truist requested Cynergy "*work with your staffing agencies and provide documentation from them evidencing that the employee's employed by KMT Wireless were not included in their own PPP applications*." Truist admitted it needed even more information from Cynergy in order to complete its forgiveness determination.

62.     Notably, this was the first time Truist had ever requested any such documentation

or indicated that any PPP loan taken by a staffing agency could cause an issue. Cynergy, in good faith, complied with such request, and advised Truist of the same on June 7, 2021. Unfortunately, Cynergy's request to the various staffing companies was either denied or wholly ignored.

63.     At no point in time from Cynergy's submission of its PPP Loan Application and Borrower Worksheet to Truist until April 2, 2021, did Truist advise Cynergy that the various staffing companies it used *could have* included Cynergy's workforce in their respective PPP loans causing amounts paid by Cynergy for these portions of its workforce to be potentially unforgivable.

64.     Truist did not issue a forgiveness determination regarding Cynergy's forgiveness application on or before May 24, 2021, as required by 15 U.S.C.A. § 636m(g).

65.     After repeatedly trying to receive such information from the staffing companies to no avail, and as the statutory deadline for Truist to issue a decision regarding Cynergy's forgiveness application had passed, Cynergy followed up with Truist requesting further clarification on what could be done to support full forgiveness of the Loan.

66.     After Cynergy followed up on two separate occasions and received no response from Truist, JC Boyanton advised Cynergy on July 12, 2021 that "*I'm trying to get an update from our SBA/PPP team. I will call them today and circle back with an update.*" Truist, however, did not provide Cynergy with an update as represented, prompting Cynergy to once again follow up with Truist regarding the status of its forgiveness application.

67.     On July 30, 2021, JC Boyanton advised Cynergy that Truist's PPP Team determined Cynergy had several options, including requesting "a Loan Review by the SBA" by sending a formal request to Associated General Counsel for Litigation with the SBA. Still, by July 30, 2021, based on communication from Truist, Cynergy reasonably believed Truist had not

resolved the internal review of Cynergy's forgiveness application and had not issued a final determination to Cynergy.

**E.  Cynergy seeks SBA review, but the SBA refuses to intervene, claiming Truist never submitted a forgiveness application for Cynergy's loan.**

68.    In accordance with Truist's direction, Cynergy forwarded formal correspondence to the Associate General Counsel for Litigation with the SBA on August 1, 2021, requesting the SBA approve its forgiveness application "based upon documentation provided in its application and agree [Cynergy] used the funds appropriately to keep 300 people employed during the pandemic."

69.    The SBA promptly responded via email on August 2, 2021, copying JC Boyanton, advising "Please note that SBA's Paycheck Protection Program (PPP) forgiveness platform does not reflect a forgiveness application has been submitted to SBA by your lender for your loan, although you state that you submitted a forgiveness request to your lender on March 25, 2021." Its forgiveness application process was not yet final and there still was no determination regarding forgiveness.

70.    In response, JC Boyanton emailed Cynergy on August 2, 2021 advising "I have forwarded to our PPP team and asked if there is a different process for SBA review," despite the SBA explaining Truist had not submitted Cynergy's March 25, 2021 forgiveness application.

71.    On August 10, 2021, JC Boyanton advised Cynergy that "*Our PPP team is discussing next steps, and I expect to be able to provide an update within the next few days.*" Truist, however, did not provide Cynergy with an update as represented, prompting Cynergy to once again follow up with Truist regarding the status of its forgiveness application on September 14, 2021.

72.    On September 15, 2021, JC Boyanton advised "I have reached out to the PPP

team for a status update letting them know that it has been over a month since the last update. I will circle back as soon as I get a reply." This is the last correspondence Cynergy received from Truist regarding its pending forgiveness application.

73.    Upon information and belief, Truist never contacted the SBA for further guidance as to whether the documentation submitted by Cynergy supporting its Payroll Costs, namely the invoices from its various staffing companies and bank reconciliations evidencing payment thereof, were sufficient to support a full forgiveness determination by Truist. Meanwhile, Truist represented to Cynergy on numerous occasions that it *was* seeking guidance from the SBA. Rather, and as apparent from Truist's complete failure to review and process Cynergy's forgiveness application in a reasonable time, Truist seemingly believed that the best way to handle the novel issue presented by Cynergy's forgiveness application was to ignore the issue entirely hoping it would somehow resolve itself.

74.    To Cynergy's shock, the next communication it received from Truist – after 86 days of radio silence – was a letter uploaded to the Truist portal on December 10, 2021.  This letter advised Cynergy that only $876,873.58 of its $2,228,862.00 Loan "*may* be forgiven," and that the remaining $1,315,590.18 "*may not* be forgiven" due to "insufficient documentation provided which supports eligible use of proceeds." Truist did not advise Cynergy as to what amounts it unilaterally and arbitrarily deemed "may" be forgivable in this correspondence, nor did Truist cite any SBA regulations or guidance supporting its forecasted determination. The December 10, 2021 letter stated "Please note that our decision and the forgiveness amount are subject to review by the SBA and their **final** decision." (emphasis added) Thus, the preliminary determination by Truist was not a final decree of Cynergy's forgiveness status.

75.    On December 13, 2021, Truist, through its portal, notified Cynergy that "The

SBA has selected your Paycheck Protection Program (PPP) loan for review. As a result, your application is currently locked for any modifications." Upon information and belief, this was not true. Nevertheless, Cynergy at the time believed its forgiveness application remained unresolved and a decision from the SBA could ultimately rectify the internal issues which delayed Truist's ability to reach a clear forgiveness determination.

76.     On December 15, 2021, the SBA issued forgiveness payment in the amount of $876,873.58 in principal and $15,297.30 in interest based upon Truist's partial forgiveness determination and issued a Notice of Paycheck Protection Program Forgiveness Payment that read: "THIS DOCUMENT IS A NOTICE OF PAYMENT ONLY. ISSUANCE OF THIS NOTICE OF PAYMENT DOES NOT PROVIDE THE BORROWER WITH A RIGHT TO APPEAL TO THE SBA OFFICE OF HEARINGS AND APPEALS." Importantly, this $876,873.58 forgiveness amount is *much less* than Cynergy paid in indisputably forgivable expenditures such as payroll for W-2 employees not placed through staffing agencies, rent, and other expenses.

77.     Per SBA Procedural Notice Control No. 5000-20077, "[i]f SBA has not provided a Loan Review Notification to the lender" i.e., the PPP loan has not been selected for an SBA loan review, "SBA will issue a Notice of Paycheck Protection Program Forgiveness Payment (Payment Notice) to the lender when it remits a loan forgiveness payment."

78.     On December 20, 2021, Cynergy notified Truist – through the Truist portal – that it officially disputed Truist's determination of the forgiveness amount, requesting abeyance of any repayment obligations under the Loan until the dispute was resolved.

79.     On December 23, 2021, Truist responded through the portal that it would "notify the SBA of your request within 5 days of your notice to us," and further representing to Cynergy

that "it must submit an appeal request *via* the SBA Website to review our decision by January 10, 2021." Based on Truist's December 23, 2021 communication, Cynergy reasonably believed Truist had at least one remaining avenue for obtaining clarification on how to evaluate the forgiveness determination – via the SBA review.

80.     Cynergy immediately notified Truist in writing on December 23, 2021, that it disputed Truist's partial forgiveness determination and formally requested SBA review of the same, and, in accordance with Truist's representation proceeded with filing an appeal with SBA's Office of Hearings and Appeals ("OHA").

81.     Despite the SBA specifically cautioning lenders from providing erroneous information regarding borrower appeal rights, Truist erroneously represented to Cynergy that Cynergy **must** submit an appeal request *via* the SBA website although a final determination had yet to be rendered by the SBA.

82.     Upon information and belief, Truist never notified the SBA of Cynergy's challenge regarding the December 10, 2021, Partial Forgiveness Determination, despite specifically representing that it would do so "within 5 days of your notice to us."

83.     On January 27, 2022, the SBA  published Procedural Notice Control No. 5000-827666 announcing the creation of Loan Reviews of Paycheck Protection Program Lender Partial Approval Forgiveness Decisions. After the SBA published Procedural Notice Control No. 5000-827666 on January 27, 2022, and despite already notifying Truist of its challenge regarding Truist's partial forgiveness determination on December 23, 2021, Cynergy, out of an abundance of caution, again forwarded formal written notice to Truist of its request for the SBA to review Truist's partial forgiveness determination on February 11, 2022. In an abundance of caution, Cynergy began making payment on the unforgiven portion of the PPP Loan on January 31, 2022

pending review by the SBA.

84.    Cynergy then requested additional information from Truist regarding its basis for determining that only $876,873.58 of its $2,228,862.00 Loan was forgivable, specifically requesting Truist detail its basis for that amount and any rule, regulation or law supporting the same. As of the filing of this Complaint, Truist has not responded.

85.    On March 23, 2022, the SBA dismissed Cynergy's appeal as premature because the SBA "ha[d] not yet made a final loan review decision." In doing so the SBA confirmed it did not yet have jurisdiction over the matter. Cynergy was perplexed as to why the review process, which it understood was initiated in January 2022 and to which Cynergy submitted its application in February 2022, was deemed to be premature.

86.    At that point, Cynergy's sole recourse was to handle its challenge through Truist, who had not yet informed the SBA of Cynergy's challenge to its partial forgiveness determination, despite Cynergy's two requests. Cynergy directed Truist to resubmit all documentation supporting full forgiveness of the Loan.

87.    On April 22, 2022, Truist informed Cynergy that "Unfortunately, the SBA's review process for partial forgiveness appears to remain under development despite the January 27, 2022, announcement of an appeal procedure."

88.    It was not until August 26, 2022, over six months after it was notified of Cynergy's request for SBA review of Truist's partial forgiveness determination, that Truist submitted a review request of its forgiveness determination to the SBA. Thus, Cynergy could not have initiated a review of Truist's forgiveness decision before, at the earliest, August 2022. This was obviously well outside of the five day period required by SBA Procedural Notice Control No. 5000-827666 and Truist's direct representation that it would submit the forgiveness

determination the same within five days of receipt.

89.     Throughout this period, Cynergy continuously followed up with Truist requesting a status of its challenge to Truist's partial forgiveness determination. Truist continuously came up with excuses regarding its failure to take any action, including that it was unable to submit reconsideration requests through the SBA portal.

90.     Approximately eight months later, on April 14, 2023, Truist notified Cynergy that the SBA initiated a Reconsideration Review related to the Loan. At this time, the SBA – through Truist – requested that Cynergy provide additional information and materials related to its review.

91.     Cynergy provided the requested information and materials. During this exchange, Cynergy formally requested the SBA review the PPP loans taken out by the various staffing companies used by Cynergy, namely, Automation Personnel Services, Inc., DFW Job Interlock Corp, MDMartin, LLC and MOA Staffing, Inc.

92.     On June 5, 2023, the SBA notified Truist of its preliminary recommendation related to its preliminary findings while reviewing the Loan, stating: "As part of this review, additional information is required and is outlined below in this letter. Without the benefit of the additional documentation requested, SBA will have to make a decision that might negatively impact the borrower" and advising Cynergy to "[p]lease understand our recommendation is preliminary and will undergo more processing before reaching a final decision." In response, Cynergy reiterated its position regarding full forgiveness of the Loan and review of the respective PPP loans received by the various staffing companies used by Cynergy.

93.     Receiving no response from the SBA, in October of 2023, Cynergy requested an update from the SBA regarding its review of the Loan. In response, the SBA informed Cynergy

that it could no longer communicate directly with the SBA and that Truist would be the sole point of contact regarding the SBA's review of the Loan moving forward.

94.     From October 2023 through the present, Cynergy has repeatedly followed up Truist regarding the status of the SBA's review of the Loan, however, no substantive update has been provided other than the Loan is going through additional levels of review.

95.     Over a year has passed since Cynergy's last communication with the SBA, and a final determination regarding forgiveness of the Loan has still yet to be issued. In the interim, Cynergy was forced to continue repaying the Loan to Truist to avoid defaulting under the PPP Note.

96.     Upon information and belief, other SBA lenders successfully submitted reconsideration requests through the SBA portal during this time period.

97.     Adding insult to injury, Cynergy operated at a net loss in 2020, primarily due to the maintenance of its pre-pandemic workforce where the demand for Cynergy's services was drastically reduced.

98.     Upon information and belief, Truist assumed without proof, the staffing companies used by Cynergy received the full cost of their workforce plus a markup paid directly by Cynergy, and the full cost of such workforce through the PPP. Cynergy is unaware of any rule, regulation, or law allowing a lender to deny forgiveness of PPP proceeds used in the furtherance of the spirit and intent of the PPP based on an unsubstantiated assumption, and Truist has failed to point to one or otherwise explain why Cynergy's use of the funds was not permitted under the PPP.

99.     Cynergy's reasonable understanding, based on Truist's pre-loan representations, was that the entire loan amount would be forgiven since Cynergy used all the loan proceeds for

loan purposes stated in its Application to Truist.

100.    At the time it accepted Cynergy's Loan Application, and funded Cynergy's Loan, Truist knew (or, alternatively, reasonably should have known) that Cynergy's reasonable expectation was that the entire Loan amount would ultimately be forgiven.

101.    At the time it accepted Cynergy's Loan Application, and funded Cynergy's Loan, Truist knew (or, alternatively, reasonably should have known) that the workforce used by Cynergy secured through staffing companies could be potentially included in the respective staffing companies' PPP Loan applications.

102.    Cynergy would not have taken the Loan had it believed that any portion of the Loan proceeds were not eligible for forgiveness. Alternatively, Cynergy would not have expended the proceeds of the Loan that Truist represented would be forgivable on the workforce it secured through staffing companies had Truist advised Cynergy payment to the workforce from staffing companies may not be forgivable.

103.    Cynergy complied with SBA's and Truist's requirements in every other material way, such that nothing Cynergy did or failed to do would have otherwise jeopardized the forgivability of the Loan.

**F.  The Discovery Rule tolls accrual of the Statute of Limitations**

104.    On June 5, 2023, the SBA released a preliminary recommendation that Cynergy's loan would not be forgivable. This was the first time the SBA, the ultimate authority on the issue, had given an opinion on the forgiveness application. . Thus, at the earliest, Cynergy's claims accrued on June 5, 2023.

105.    Cynergy's injury was inherently undiscoverable due to (1) months of delay and lack of communication by Truist, and (2) the delayed review and appeal process by the SBA.

Cynergy's injury is objectively verifiable because  it is currently repaying $1,315,590 of its $2,228,862.00 PPP Loan.

106.    Cynergy's injury is objectively verifiable because it is currently repaying over $1.3 million of the PPP loan, which it should not have to repay.  The SBA's final determination on forgiveness will decide whether any of the payments Cynergy is making will be reimbursed. To date, the SBA has not issued a final determination regarding its review of Cynergy's loan. At the earliest, Synergy's claim may have accrued on June 5, 2023 when the SBA notified Truist of its preliminary recommendation upon review of Cynergy's loan. Until that time, Truist's wrongful act had not yet caused a legal injury to Cynergy. "A cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008)(*quoting S.V. v. R.V.*, 933 S.W.2d 1, 4, (Tex. 1996) ). But the date of accrual is tolled if the discovery rule applies. *Id.* at 357.

107.    Here, Cynergy did not suffer a legal injury until the SBA determined that Cynergy's PPP Loan would not be forgiven and any payments made in the abundance of caution would not be reimbursed. At the earliest, on June 5, 2023, Cynergy's claims accrued because Truist's wrongful act – the misrepresentation – finally caused injury to Cynergy because $1,315,590 of its $2,228,862.00 PPP Loan would not be forgiven. Thus, Cynergy's negligent misrepresentation claim is not barred by the statute of limitations. *See also, Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (under Texas law, negligent misrepresentation claim must be brought within two years from time cause of action accrues, and "[i]n general, a cause of action accrues and the limitations period begins when a wrongful act causes a legal injury"). Likewise, Cynergy's Fraudulent Inducement claim is not barred by the 4-

year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).

**G. Truist adds insult to injury and calls the loan due prematurely and in violation of the promissory note.**

108.    Cynergy entered into the Paycheck Program Promissory Note ("PPP Note") on April 20 2020 with a Loan Amount of $2,228,862.00.

109.    On April 21, 2020, Truist funded the Loan to the amount of $2,228,862.00.

110.    Truist is an SBA lender as established and regulated by 15 U.S.C. § 633 et. seq. and Title 13 of the Code of Federal Regulations.

111.    As such, Truist and the PPP Note operate under and are bound by the statutory framework of the CARES Act and its related legislative directives and guidance. *See* 13 C.F.R. § 121 et. seq.

112.    In fact, page 2 of the PPP Note states "this Note is being made solely for the permitted use of proceeds specified in the CARES Act and related regulations," meaing the PPP Note expressly incorporated the CARES Act.

113.    On June 5, 2020, Congress amended the Small Business Act and the CARES Act extending the deferral period for repayment of PPP Loans until the SBA issues a final forgiveness determination. PPP Appeals Deferment, 86 Fed. Reg. 40,921 (July 28, 2021) (to be codified at 13 CFR Part 120).

114.    The amendment is made effective as if included in the CARES Act and applies to "any loan made pursuant to section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36) or section 1109 of the CARES Act."

115.    On or about April 6, 2025, Truist sent a monthly statement to Cynergy in which it purported to accelerate the remaining balance of the Loan and demanded full payment before the end of April 2025.

116.     Truist's demand for payment while the SBA has not issued a final forgiveness decision on Cynergy's loan forgiveness review is a breach of the PPP Note as amended by the June 5, 2020 legislative amendment.

## COUNT I
## DECLARATORY RELIEF (AGAINST ALL DEFENDANTS)

117.     Plaintiff restates and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

118.     Cynergy used the entirety of the $2,228,862.00 Loan proceeds to specifically pay for: (i) the maintenance of its pre-pandemic workforce; (ii) worker safety improvements to its facility; and (iii) covered expenditures, yet it is being forced to repay forgivable portions of the Loan due to Truist's unsubstantiated partial forgiveness determination.

119.     Cynergy has exhausted all remedies available per the SBA's guidelines, as Cynergy: (i) timely notified Truist of its challenge and formal request for review of Truist's partial forgiveness determination; (ii) repeatedly attempted to work with Truist to provide additional information and documentation supporting the full forgiveness of the Loan; (iii) submitted, through Truist, a formal request for review of Truist's partial forgiveness determination to the SBA; and (iv) filed an appeal with the SBA Office of Hearings and Appeals, which was dismissed for lack of jurisdiction.

120.     Despite a review request regarding Truist's partial forgiveness determination being submitted to the SBA on August 26, 2022, over 6 months have passed without a response or any action from the SBA.

121.     There is a controversy between the parties as to the forgivability of the Loan, as Truist demands payment, and Cynergy maintains the balance should have been forgiven.

122.     Without a final determination as to the forgivability of the Loan, Cynergy is

continuing to incur actual and direct injury in repaying otherwise forgivable portions of Loan, with interest, to avoid defaulting under the Note. Cynergy therefore requests that this Court enter judgment declaring that:

(i)      the entirety of the $2,228,682.00 Loan was used by Cynergy for permitted purposes under the Paycheck Protection Program; and

(ii)     Cynergy is entitled to full forgiveness of the $2,228,682.00 Loan under the Paycheck Protection Program.

**COUNT II**
**NEGLIGENT MISREPRESENTATION (AGAINST TRUIST)**

123.    Plaintiff restates and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

124.    The SBA utilized financial institutions like Truist to process applications and approvals for PPP Loans not only from an administrative standpoint, but because of their superior knowledge on lending and loan approvals. With this superior knowledge, these financial institutions were expected to educate themselves on the PPP Loan process so they could in turn educate applicants.

125.    As of April of 2020, Truist, a financial institution, was in the business of supplying information for the guidance of borrowers in their business transactions. Specifically, here, Truist was in the business of providing information by way direct communications with borrowers and worksheets to guide would-be borrowers in their navigation of PPP loan repayment rules. Truist provided this very information to help guide Cynergy to determine whether it made sense to enter into a loan agreement with Truist.

126.    In this role, Truist represented to Cynergy that it would be reviewing Cynergy's loan documentation in order to confirm and verify eligibility for a PPP Loan, as well as the

qualifying loan amount. Truist knew, or should have known, that Cynergy was relying on its superior knowledge, experience, and judgment, and was under a duty to exercise reasonable care to disclose to Cynergy accurate information about the PPP, including what was needed to qualify for a PPP Loan and related forgiveness. Given Truist's position in approving these loans, Cynergy had no reasonable basis to distrust the information Truist provided to it.

127.    Truist owed Cynergy a duty to not misrepresent the terms by which Cynergy would have been obligated to repay its PPP Loan (i.e., the circumstances under which Cynergy's loan would not be forgiven) during Cynergy's application process.

128.    Truist breached that duty by providing information it now claims is incorrect to Cynergy.

129.    In April of 2020, Truist supplied misinformation to Cynergy which led Cynergy to take a loan that it would not otherwise have taken. Specifically, Truist misrepresented the fact Cynergy would have no repayment obligation with respect to loan proceeds used to pay the portion of its workforce secured through staffing companies. That representation was false.

130.    Truist either knew or should have known the extent to which Cynergy's loan would not be forgiven and should have made this clear to Cynergy before Cynergy entered into a PPP loan.

131.    Truist's negligent misrepresentations were critical to Cynergy's decision to take Truist up on its loan offer. Truist made these representations and omissions of fact knowing and intending that Cynergy would rely upon them, and Cynergy did in fact rely upon it.

132.    Had Truist not made this negligent misrepresentation and omissions of material fact to Cynergy, Cynergy would not have included amounts paid to the portion of its workforce secured through staffing companies, nor would Cynergy have maintained its full workforce.

133.    The information Truist supplied indicating that payments to the portions of Cynergy's workforce secured through staffing companies qualified as forgivable "payroll" costs was far from ancillary or incidental to Cynergy's agreeing to the terms of the loan.  In addition to Truist's demand for repayment, and accruing interest, Cynergy has been required to accrue debt against its business and record the debt as an outstanding payable debt to Truist.

134.    Truist's breach proximately caused damages to Cynergy.

### COUNT III - FRAUDULENT INDUCEMENT (AGAINST TRUIST)

135.    Plaintiff restates and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

136.    Truist represented to Cynergy that it would be reviewing Cynergy's loan documentation in order to confirm and verify eligibility for a PPP Loan, as well as the qualifying loan amount.

137.    Truist represented to Cynergy that loan proceeds which Cynergy could show it used to pay the portion of its workforce secured through staffing companies would be forgiven. Truist now claims that representation was false.

138.    Truist made the misrepresentation knowing the representation was false or asserted it without knowledge of its veracity.

139.    Truist made the misrepresentation with the intent Cynergy rely upon it, and Cynergy did in fact rely upon it.

140.    Cynergy's reliance upon the misrepresentation caused Cynergy injury because it requires Cynergy to pay the entire amount due in a matter of days when Cynergy should not be required to pay these sums at this time—or at all.

141.    Cynergy is entitled to its reasonable and necessary attorneys' fees in bringing this

claim under Tex. Civ. Prac. & Rem. Code § 38.001.

**COUNT IV – BREACH OF CONTRACT IN THE ALTERNATIVE (AGAINST TRUIST)**

142.     Plaintiff restates and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

143.     In the alternative to its fraudulent inducement claim, Cynergy asserts Truist is in breach of the PPP Note.

144.     The PPP Note, as amended by Congress's amendments to the CARES Act, is a valid, enforceable contract.

145.     Cynergy has fully performed its obligations under the PPP Note and, in fact, is making payments under the PPP Note in an abundance of caution even though the PPP Note should be fully forgiven.

146.     Truist has breached the PPP Note by purporting to accelerate it while the law and the terms of the PPP Note require that Truist defer any payment obligation until the SBA makes a final determination on forgivability.

147.     Truist's breach has caused Cynergy injury.

**COUNT V – CLAIM FOR JUDICIAL REVIEW UNDER THE APA (AGAINST SBA)**

148.     Plaintiff restates and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

149.     Pursuant to 5 U.S.C. § 702, Plaintiff, which is a "Person" under the APA, is suffering a legal wrong because of agency action, and is adversely affected or aggrieved by agency action and is thus entitled to judicial review.

150.     "Agency action" is defined to "include[] the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

151.    "Relief" is defined as "authority" or "recognition of a claim, right, immunity, privilege, exemption, or exception[]. 5 U.S.C. § 551(11).

152.    5 U.S.C. § 704 provides that final agency action is subject to judicial review. The SBA denied Plaintiff its right to have its PPP loan forgiven through at least one distinct "final agency action" this is the subject of this complaint. In particular, the SBA has failed to complete a loan review of Cynergy's PPP loan, held Cynergy's forgiveness application hostage for a period of nearly two years, resulting in a de facto denial of Cynergy's forgiveness application.

153.    This action determines rights and obligations and dictates whether Cynergy will receive money to which it is entitled. This action also impacts Cynergy's rights because in the meantime, Cynergy must make payments on the loan to avoid default. In fact, on or around April 6, 2025, Truist called the loan due April 21, 2025.

154.    Under the APA, a reviewing court shall "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."

155.    With that authority, the reviewing court shall:

(1)    compel agency action unlawfully withheld or unreasonably delayed; and

(2)    hold unlawful and set aside agency action, findings, and conclusions found to be:

(A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)    contrary to constitutional right, power, privilege, or immunity;

(C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or

(D)    without observance of procedure required by law.

156.    An agency action is arbitrary and capricious if an agency has "entirely failed to

consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[3] A reviewing court must undertake a "thorough, probing, in-depth review" of the agency's decision and then decide whether it was "based on a consideration of the relevant factors and whether there has been a clear error of judgment."[4] Review of agency action generally "is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision."[5]

157.    The SBA's failure to complete Cynergy's forgiveness application review and deem the PPP loan fully forgivable is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; or short of statutory rights.

158.    Pursuant to 5 U.S.C. § 706(1), the SBA should complete the review it has unreasonably delayed and forgive Plaintiff's PPP loan.

159.    Alternatively, this matter should be remanded to the SBA with declaratory judgment finding that the SBA's existing analysis as to the forgivability of Plaintiff's PPP loan is inadequate.

## PRAYER

**WHEREFORE**, the Plaintiff, KMT Wireless, LLC d/b/a Cynergy respectfully prays that the Court enter judgment declaring that:

(i)    the entirety of the $2,228,682.00 Loan was used by Cynergy for permitted purposes under the Paycheck Protection Program; and

---

[3] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).
[4] *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971).
[5] *Id.* at 420.

(ii)    Cynergy is entitled to full forgiveness of the $2,228,682.00 Loan under the Paycheck Protection Program.

Cynergy further respectfully requests that the Court review the SBA's failure to complete a loan review and determine Cynergy's PPP loan forgivable pursuant to the APA and either find the SBA's conduct arbitrary and capricious or remand the matter to the Agency for further review and fact finding.

Cynergy further respectfully prays that the Court enter judgment in its favor and against the above-captioned Defendant by awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, and granting such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

Dated:  April 18, 2025

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  */s/ Claire Carroll*
       Claire Carroll
       Texas State Bar No. 24092224
       ccarroll@munsch.com
       4000 Ross Tower
       500 N. Akard Street, suite 4000
       Dallas, Texas  75201-6659
       Telephone: (214) 855-7500
       Facsimile: (214) 855-7584


       Jonathan L. Schultis (*pro hac vice*
       forthcoming)
       Texas State Bar No. [TX LICENSE]
       Ricci Partners, LLC
       101 W. Robert E. Lee Boulevard, Suite 400
       New Orleans, Louisiana 70124
       T: (504) 304-7115
       F: (504) 309-1123
       E:  j.schultis@riccipartnersllc.com


       ***Attorneys for KMT Wireless, LLC d/b/a Cynergy***